# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

## No. 201700075

———————————

## UNITED STATES OF AMERICA
Appellee

v.

## STEVEN M. LARRABEE
Staff Sergeant (E-6), U.S. Marine Corps (Retired)
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges: Lieutenant Colonel Eugene H. Robinson, Jr.,
USMC.
Convening Authority: Commanding General, Marine Corps
Installations Pacific, Okinawa, Japan.
Staff Judge Advocate's Recommendation: Major Christopher W.
Pehrson, USMC.
For Appellant: Commander Brian L. Mizer, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant George R. Lewis, JAGC, USN.

———————————

Decided 28 November 2017

———————————

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

SAYEGH, Judge:

At a general court-martial, a military judge convicted the appellant, pursuant to his pleas, of one specification of sexual assault and one specification of indecent recording in violation of Articles 120 and 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920 and 920c. The

military judge sentenced the appellant to eight years' confinement, a reprimand, and a dishonorable discharge. The convening authority (CA) disapproved the reprimand, but approved the remainder of the sentence. In accordance with the pretrial agreement (PTA), the CA suspended confinement in excess of 10 months, and, except for that part of the sentence extending to the dishonorable discharge, ordered the sentence executed.

The appellant raises four assignments of error (AOEs): (1) the staff judge advocate (SJA) created unlawful command influence (UCI) by attempting to have the military judge reassigned a year before he was scheduled to leave his judicial assignment in Okinawa, Japan; (2) the CA abused his discretion by not approving the appellant's request for a post-trial Article 39(a) session to investigate the appellant's allegations of UCI; (3) application of jurisdiction under Article 2(a)(6), UCMJ, is unconstitutional in this case where the appellant was transferred to the Fleet Marine Corps Reserve three months prior to committing the offenses to which he pleaded guilty; and (4) a court-martial cannot sentence a service member transferred to retired status to a punitive discharge.[1]

Having carefully considered the record of trial and the parties' submissions, we conclude the findings and sentence are correct in law and fact and find no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and (66)(c), UCMJ.

## I. BACKGROUND

The appellant retired from active duty in the United States Marine Corps on 1 August 2015 and was transferred to the Fleet Marine Corps Reserve. Upon retiring, the appellant remained in Iwakuni, Japan, and began managing two local bars. On 15 November 2015, the appellant video-recorded himself sexually assaulting KAH at one of the bars he managed. On 25 May 2016, the Secretary of the Navy authorized the CA to "apprehend, confine, or, exercise general-court martial convening authority" over the appellant.[2] On 2 June 2016, the CA placed the appellant in pretrial confinement (PTC). On 7 June 2016, an initial review officer (IRO) determined grounds existed to retain the appellant in PTC.

In August 2016, the appellant's trial defense counsel (TDC) filed a motion alleging the IRO abused his discretion and seeking the appellant's immediate

---

[1] In accordance with our holding in *United States v. Dinger*, 76 M.J. 552 (N-M. Ct. Crim. App. 2017), *rev. granted*, __ M.J. __, 2017 CAAF LEXIS 995 (C.A.A.F. Oct 16, 2017), we summarily reject AOEs 3 and 4. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

[2] Appellate Exhibit (AE) IV at 2, Secretary of the Navy Memorandum for Commanding General, Marine Corps Installations Pacific of 25 May 2016.

release from PTC. On 14 September 2016, the military judge ruled that the IRO abused his discretion and ordered the appellant released from PTC. Five days later, on 20 September 2016, the appellant was released from PTC and placed on pretrial restriction. On 26 October 2016, the TDC filed a motion, pursuant to Article 13, UCMJ, for illegal pretrial punishment.

During the Article 13, UCMJ, motion session, the defense called the SJA to establish the SJA's improper motives and basis for advising the CA to not immediately abide by the military judge's PTC release order. The SJA testified that he disagreed with some of the military judge's past rulings, to include sentences on previous cases, and that he did not agree with the military judge's decision to order the release of the appellant from PTC in this case, describing it as "erroneous."[3] The SJA testified that he asked the trial counsel (TC) to file a motion for reconsideration of the military judge's PTC release order.[4]

The SJA denied that his disagreements were personal or that they in any way affected his approach to his duties. The SJA described his personal opinion regarding previous rulings by the military judge:

> Let's agree to disagree. To characterize this as a vendetta or motive against this military judge or against any particular accused is just flat wrong. So no, I had no concern whatsoever about any previous decision. There's been hundreds of them prior to this, and there will be hundreds of them after that. And we will continue with our process as required. I can't get fixated on one decision.[5]

In support of the Article 13, UCMJ, motion, the appellant submitted an affidavit from one of his TDCs, Captain N, alleging specific comments by the SJA about the military judge. The comments were made during, and in the context of, pretrial negotiations in the appellant's case. The affidavit states that the SJA indicated he would not support the proposed PTA because, in light of the military judge's decision to order day-for-day PTC credit, it did not provide for enough confinement. The SJA further explained that he was dissatisfied with the military judge's sentences in two previous cases. Captain N quotes the SJA as saying, "Okinawa is dealing with a military judge who just does whatever he wants to do" and "[The military judge] does

---

[3] Record at 58.

[4] *Id.* at 69. The motion was ultimately withdrawn based on the government's misunderstanding of an email from the military judge that a motion to reconsider would not be litigated. *See id.* at 81-82; AE XVI at 1.

[5] Record at 69.

whatever he wants to do when I try to do everything right."[6] The SJA testified that he did not recall making the specific statements alleged in Captain N's affidavit, but he did acknowledge that during the previous "Article 6" visit he discussed with the SJA to the Commandant of the Marine Corps (CMC) the need for more judge advocates and another military judge in Okinawa.[7] The SJA denied that he requested the military judge be removed or replaced—he testified that the discussion was intended to facilitate assignment of more judge advocates and a second military judge to Okinawa in order to improve case processing times.[8] The SJA admitted he made similar remarks about judge advocate manning in Japan to the Deputy Commander, Marine Corps Installations Pacific, a week prior to his testimony.[9]

Based on the SJA's testimony, the military judge approved the TDC's request to conduct *voir dire* of the military judge.[10] During this *voir dire*, the military judge indicated that his current tour as a military judge was due to end in the summer 2018 and that he had taken no action to request reassignment sooner.[11] The military judge stated that he had received a phone call in late September or early October 2016 from Headquarters, Marine Corps. The purpose of the phone call was to inform the military judge that he would be reassigned during the upcoming summer of 2017.[12] The military judge was not given a reason for the early reassignment, only that his replacement was a newly promoted Colonel.[13] At the conclusion of the *voir dire*, the military judge indicated he had no reservations about his ability to continue to impartially try the appellant's case, and that he did not believe a third party, who knew all of the facts, would have any reservations with him remaining as the military judge in this case.[14]

During argument on the Article 13, UCMJ, motion, the TDC suggested there was UCI, stating: "Sir, just as a preliminary matter, our questions regarding the – what has been accused of tampering with the military judge and by the SJA to get him relocated, we do believe that we have raised at

---

[6] AE XVII at 7.

[7] Record at 62.

[8] *Id*. at 63-64.

[9] *Id*. at 64.

[10] *Id*. at 72.

[11] *Id*.

[12] *Id*. at 73.

[13] *Id*.

[14] *Id*. at 74-75.

least the appearance of UCI enough to shift the burden with regards to that issue onto the government."[15] The TDC made no further references to UCI. During the government's argument in rebuttal, the TC commented:

> I'm, quite frankly, completely confident that this Court is not swayed by the rhetoric that is cited in the motion trying to attack and further, you know, unannounced tries to claim some sort of [UCI] and that somehow Lieutenant Colonel [P] is communicating with Headquarters Marine Corps to try to get this – to try tp get your honor removed from the bench, which is obviously ridiculous.[16]

The military judge issued an immediate bench ruling denying the appellant's request for additional confinement credit for illegal pretrial punishment, but under RULE FOR COURTS-MARTIAL (R.C.M.) 305(k), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), did award the appellant an additional day-for-day credit for the period of time the appellant spent in PTC because the IRO abused his discretion. The military judge's ruling did not address UCI.

On 3 February 2017, the appellant submitted matters pursuant to R.C.M. 1105,requesting that the CA disqualify himself from taking action on the case, or alternatively, order a post-trial Article 39(a) session, award additional confinement credit, and grant the appellant access to Marine Corps Air Station, Iwakuni for medical care. The CA considered, but did not grant, the appellant's request.

## II. DISCUSSION

**A. UCI**

UCI is "'the mortal enemy of military justice.'" *United States v. Gore,* 60 M.J. 178, 178 (C.A.A.F. 2004) (quoting *United States v. Thomas,* 22 M.J. 388, 393 (C.M.A. 1986)). "Congress and this court are concerned not only with eliminating actual unlawful command influence, but also with 'eliminating even the appearance of [UCI] at courts-martial.'" *United States v. Lewis,* 63 M.J. 405, 415 (C.A.A.F. 2006) (quoting *United States v. Rosser*, 6 M.J. 267, 271 (C.M.A. 1979)). Indeed, the "appearance of [UCI] is as devastating to the military justice system as the actual manipulation of any given trial[.]" *United States v. Simpson*, 58 M.J. 368, 374 (C.A.A.F. 2003) (citation and internal quotation marks omitted).

---

[15] *Id.* at 76-77.

[16] *Id.* at 79.

In *United States v. Boyce*, 76 M.J. 242 (C.A.A.F. 2017), the court set forth an analytical framework for courts to use in applying this standard. First, an appellant must show some evidence that UCI occurred. *Id.* at 249. This is a low burden, but the showing "must consist of more than 'mere speculation.'" *Id.* (quoting *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013)) (additional citation omitted). Once an appellant presents some evidence of UCI, the burden shifts to the government to prove beyond a reasonable doubt that "either the predicate facts proffered by the appellant do not exist, or the facts as presented do not constitute unlawful command influence." *Id.* (citing *Salyer*, 72 M.J. at 423) (additional citation omitted). If the government meets this burden, no further analysis is necessary. *Id.* We consider the totality of the evidence in determing whether there is the appearance of UCI. *Id.* at 252.

We first turn our attention to whether the appellant properly raised the issue of UCI at trial. The appellant's brief asserts that UCI was raised at trial but "[t]he military judge simply ignored the defense request to address the [UCI] directed at the military judge."[17] We disagree. "The threshold for raising the [UCI] issue at trial is low, but more than mere allegation or speculation." *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999) (citing *United States v. Johnston*, 39 M.J. 242, 244 (C.M.A. 1994)). The appellant in this case did not file a written UCI motion or make one orally on the record. In the absence of a written or oral motion, the TDC's references to possible UCI during argument on a distinctly separate issue was not sufficient to properly raise UCI at trial.[18] Therefore, we analyze the appellant's UCI claim as one first raised on appeal.

The appellant asserts that the SJA's criticism of the military judge to the TDC during pretrial negotiations, and the apparent actions he took in trying to have the military judge reassigned a year early, amounted to UCI. The appellant also argues that after the military judge learned of the SJA's criticisms, he intentionally ignored the appellant's request to address UCI at trial and allowed himself to be influenced in his decision to deny the appellant's motion for unlawful pretrial punishment.[19]

Although neither a commander nor a CA, actions by an SJA may constitute UCI, because "'a[n SJA] generally acts with the mantle of command authority.'" *United States v. Hamilton*, 41 M.J. 32, 37, (C.M.A.

---

[17] Appellant's Brief of 8 May 2017 at 11.

[18] We considered but did not find any abuse of discretion on the part of the military judge for not recusing himself after he granted additional *voir dire* and sought challenges from both parties. Record at 75. *See United States v. Allen*, 31 M.J. 572 (N.M.C.M.R. 1990).

[19] Appellant's Brief at 11, 16.

1994) (quoting *United States v. Kitts*, 23 M.J. 105, 108 (C.M.A. 1986)). Likewise, the Court of Appeals for the Armed Forces has found UCI where the government sought to remove a sitting military judge and where government actions compelled a military judge to recuse themself. *See Salyer*, 72 M.J. at 415; *Lewis*, 63 M.J. at 405 .

At the outset, we look for facts which, if true, would constitute actual UCI. The military judge was not removed from the bench before the end of his tour. There is no evidence in the record that the SJA's comments to the SJA to CMC was the catalyst for the phone call to the military judge.[20] Even assuming the comments by the SJA to Capt N were true in all respects, they would not amount to actual UCI. The comments reflect the SJA's frustration with a military judge who makes decisions uninfluenced by command authority. The comments were also made in the context of pretrial negotiations and not in a public forum. Further, following the additional *voir dire* of the military judge, the TDC was satisfied that the military judge could continue to impartially try the appellant's case. There being no evidence the military judge was unlawfully removed from the bench, no evidence the SJA's comments or actions unlawfully influenced the proper disposition of the appellant's case, nor any challenges to the military judge prior to his ruling on the Article 13, UCMJ motion, we conclude that the appellant has failed to establish any facts, which if true, would constitute actual UCI and will focus our analysis on apparent UCI.

The appellant avers there is apparent UCI because "the public would be appalled to know the trial judiciary of the Marine Corps can be openly mocked and manipulated by senior leaders as it was in this case."[21] The appellant bears the burden of producing "some evidence" of UCI before the burden shifts to the government. *Biagase*, 50 M.J. at 150. "[G]eneralized, unsupported claims of 'command control' will not suffice to create a justiciable issue." *Green v. Convening Authority*, 42 C.M.R. 178, 181 (C.M.A. 1970). "The quantum of evidence necessary to raise unlawful command influence" requires the "record [contain] some evidence to which the [trier of fact] may attach credit if it so desires" *United States v. Ayala*, 43 M.J. 296, 300 (C.A.A.F. 1995) (citations and internal quotation marks omitted).

Assuming, without deciding, that the appellant has met the low threshold of "some evidence," the burden of proof shifts to the government to prove

---

[20] The court will not engage in speculation regarding the purpose or intent behind how the United States Marine Corps executes the assignments of their judge advocates.

[21] Appellant's Reply Brief of 11 Aug 2017 at 3.

beyond a reasonable doubt that the facts as presented do not constitute apparent UCI. *Boyce*, 76 M.J. at 249.

Unlike the military judges in *Salyer* and *Lewis* who recused themselves, the military judge here indicated he had no reservations about his ability to continue to impartially try the appellant's case, and was not challenged by either party on his ability to do so. The SJA denied on the record making any statements or taking any action intended to have the military judge reassigned.[22] The SJA testified that his attempts to facilitate assignment of additional judge advocates and another military judge to Okinawa were not based on his personal dissatisfaction with the military judge's past rulings, or any rulings in this case. This testimony was unrebutted by the appellant. Although the SJA admitted to discussing the need for additional legal personnel in Okinawa with the SJA to the CMC, there is no evidence that this discussion had any influence on the Headquarters, Marine Corps' phone call to the military judge.

The appellant's speculation regarding the SJA's motives "amounts to no more than a claim of [UCI] in the air." *United States v. Shea*, 76 M.J. 277, 282 (C.A.A.F. 2017). Morever, the military judge's Article 13, UCMJ ruling—awarding the appellant 111 additional days of PTC credit—demonstrated his ability to remain impartial despite the SJA's comments.[23] "We will not presume that a military judge has been influenced simply by the proximity of events which give the appearance of [UCI] in the absence of a connection to the result of a particlar trial." *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991) (citing *Thomas*, 22 M.J. at 369 (additional citation oitted). We find the government has proven beyond a reasonable doubt that the facts as presented do not constitute apparent UCI.

However, assuming arguendo the government failed to meet its burden, we would nonetheless find that the government proved beyond a reasonable doubt that the UCI did not place an intolerable strain on the public's perception of the military justice system because "an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Boyce,* 76 M.J. at 248 (quoting *Lewis*, 63 M.J. at 415). Unlike actual UCI, which requires prejudice to the accused, "no such showing is required for a meritorious claim of an appearance of [UCI]. Rather, the prejudice involved . . . is the damage to the public's perception of the fairness of the military justice system as a whole[.]" *Id.*

---

[22] Record at 64.

[23] *Id*. at 85.

The facts and circumstances surrounding this case include an SJA who voiced his personal displeasure with the military judge to the TDC during pretrial negotiations. As stated above, these comments were not intended for the public, nor were they substantively UCI. The SJA made a specific request directly to the SJA to CMC for an additional military judge to be assigned to Japan, and there was a subsequent phone call to the military judge from Headquarters, Marine Corps informing him that he was being reassigned a year early. However, the reasons for the phone call are not clearly established on the record, and ultimately the military judge was never reassigned. Morever, following voir dire, where the military judge stated on the record he could impartially try the case, the TDC was apparently satisfied and declined to challenge him for cause. Finally, a different SJA provided the CA the required post-trial advice and recommendations.[24] Under these facts, we find that the government has proven beyond a reasonable doubt that any apparent UCI "did not place 'an intolerable strain' upon the public's perception of the military justice system and that 'an objective, disinterested observer, fully informed of all the facts and circumstances, would [not] harbor a significant doubt about the fairness of the proceeding.'" *Boyce*, 76 M.J. at 249 (quoting *Salyer*, 72 M.J. 423).

## B. CA's denial of post-trial Article 39(a), UCMJ, hearing

The appellant asserts as error that the CA abused his discretion in "ignoring" the request for a post-trial Article 39(a), UCMJ, session after being presented with "more than enough evidence that the [UCI] in this case is not harmless beyond a reasonable doubt."[25] Although not referenced in the post-trial submission, we reviewed the appellant's request as one pursuant to R.C.M. 1102(b)(2).

R.C.M. 1102(b)(2) and (d) provide authority for a CA to direct a post-trial Article 39(a), UCMJ, session for the purpose of inquiring into, and when appropriate, resolving "any matter that arises after trial and that substantially affects the legal sufficiency of any findings of guilty or the sentence." R.C.M. 1102(b)(2). "When an appellant requests the [CA] to order a post-trial Article 39(a) session, it is a matter for the [CA's] sound discretion whether to grant the request." *United States v. Ruiz*, 49 M.J. 340, 348 (C.A.A.F. 1998). In as much as a CA may be persuaded by facts, a CA is not compelled to approve a request "based merely on unsworn, unsubstantiated assertions." *Id.* "We review a convening authority's decision not to grant a

---

[24] The appellant does not argue and we find no evidence in the record that the removal of the original SJA was some indicia of UCI. There are many reasons SJAs are substituted during the post-trial process.

[25] Appellant's Brief at 19.

post-trial hearing for an abuse of discretion." *United States v. Lofton*, 69 M.J. 386, 391 (C.A.A.F. 2011) (citing *Ruiz*, 49 M.J. at 348). Both *Lofton* and *Ruiz* found that it was an abuse of discretion for a CA to deny a request for a post-trial 39(a) session that was based on substantiated assertions. *Lofton,* 69 M.J. at 392; *Ruiz*, 49 M.J. at 348.

The appellant's request for a post-trial Article 39(a), UCMJ, was to address the appellant's assertions of UCI on the part of the SJA.

> "We request a post-trial hearing to determine (1) whether [UCI] occurred in this case; (2) whether the military judge should have recused himself before awarding a sentence or ruling on motions; and (3) if the answer to (2) is yes, then whether SSgt Larrabee should have been awarded additional credit for illegal pretrial punishment and the [CA's] refusal to obey a judicial order."[26]

The appellant's request alleges apparent UCI through the actions of the SJA and that the military judge was being reassigned early due to "defense friendly rulings."[27] The appellant's request also included new allegations that accused the SJA of fabricating evidence and misrepresenting facts to an administrative discharge board that occurred after the appellant's court-martial and was unrelated to the appellant's case.[28] Finally, the request included an affidavit from a TDC not detailed to this case. In this affidavit the TDC alleges a conversation about a PTC issue in an unrelated case where the SJA said over the phone in a "very derisive tone," saying "'[The Military Judge] is a liberal judge' who 'does not understand the purpose of military justice' and that the area needed a better judge, or words substantially to that effect."[29] The CA's action indicates the the appellant's request was considered before the CA took action and approved the sentence as adjudged.[30]

We find the appellant's request did not substantiate his assertions. The affidavit presented to the CA included comments between the SJA and a TDC made in the context of discussing a PTC issue associated with an unrelated case. The comments were unprofessional, but not intended for the public, nor did they constitue UCI on the part of the SJA. The request alluded to the SJA

---

[26] Addendum to SJA's Recommendation (SJAR) dated 8 Feb 2017, Encl. (1) at 3.

[27] *Id*. at 4.

[28] *Id.*

[29] *Id.*, Encl. (1) to Encl. (1).

[30] CA's Action of 15 Feb 17. A different SJA prepared and processed the SJAR and SJAR addendum.

creating apparent UCI through his actions, but provide the CA no additional evidence to substantiate that allegation. The appellant asserts the military judge was being reassigned early because of his previous rulings, but includes nothing to support the claim. Similarly, the appellant's allegation that the SJA intentionally fabricated evidence before an unrelated administrative discharge board hearing that occurred after the appellant's trial is not relevant to the appellant's court-martial. Although the allegations in the appellant's request may raise questions regarding the character and conduct of the SJA, they do not substantiate the allegation that the SJA was able to influence the military judge's rulings in this case, or influence the decision of Headquarters Marine Corps to notify the military judge of a potential early reassignment.

We find the appellant's request fails to sufficiently establish any matter that would affect the legal sufficiency of the proceedings, and thus conclude that the CA did not abuse his discretion in denying the appellant's request for a post-trial Article 39(a), UCMJ, session.

### III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed.

Senior Judge HUTCHISON and Judge FULTON concur.


For the Court



R.H. TROIDL
Clerk of Court