# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39023**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Clarence ANDERSON III**
Major (O-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 31 May 2017

————————————

*Military Judge:* Marvin W. Tubbs II.

*Approved sentence:* Dismissal and confinement for 42 months. Sentence adjudged 22 April 2015 by GCM convened at Holloman Air Force Base, New Mexico.

*For Appellant:* Major Lauren A. Shure, USAF; Captain Allen S. Abrams, USAF; Brian L. Mizer, Esquire.

*For Appellee:* Major Jeremy D. Gehman, USAF; Major G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and SPERANZA, *Appellate Military Judges.*

Judge SPERANZA delivered the opinion of the court, in which Senior Judges MAYBERRY and JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SPERANZA, Judge:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of sexual assault, abusive sexual contact, aggravated assault, assault consummated by battery, kidnapping, and wrongfully communicating a threat—in violation of Articles 120, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928, 934.[1] The adjudged and approved sentence was a dismissal and confinement for 42 months.

Appellant now asserts six assignments of error: (1) the military judge abused his discretion in excluding evidence under Mil. R. Evid. 412; (2) the evidence is factually insufficient to prove the charged offenses; (3) the military judge erred when he determined he did not have the authority to address additional matters and a motion for new trial raised during a post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a) session; (4) the convening authority abused his discretion when he denied Appellant's request for a second post-trial hearing; (5) Appellant was denied his due process right to timely appellate review; and (6) Appellant was a victim of bribery in violation of 18 U.S.C. § 201, warranting the setting aside of the findings and sentence.[2] We disagree and affirm.

## I. BACKGROUND

Appellant and KA met in 1994 while attending junior college in Alabama. After going their separate ways, they reconnected in November of 2007 and were married in February of 2008. The marriage was a rocky one. As KA explained, "Some days could be really good. He could buy flowers and be the perfect gentleman. Some days could be awful."

Those awful days included acts of physical abuse. In August of 2009 while in Alabama, Appellant choked KA. She contacted the police, but when they arrived she decided not to make a report.

In November of 2012 while in Florida, Appellant put his hand over KA's mouth and nose, confined her in a bathroom, and told her that he knew how to kill her and blame it on post-traumatic stress disorder. KA's then-12-year-old son witnessed portions of this altercation and took photographs of KA. When KA spoke with the police, they took additional photographs of her. Appellant

---

[1] The military judge acquitted Appellant of two specifications of assault consummated by battery and one specification of kidnapping.

[2] The sixth issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Having considered Appellant's arguments, we summarily reject them as they do not require additional analysis or warrant relief. *See United States v. Matias*, 25 M.J. 356 (C.M.A. 1987).

filed for divorce shortly after this incident, but, after going through mediation, the couple reconciled.

However, their marriage did not improve. Between 12 and 17 January 2013, Appellant sent KA a series of text messages that, among other things, stated:

> Not saying I'm not innocent [sic] at all but you started with the mail altercation and then threatened me with changing the locks and grabbing my uniforms saying they were going to be tossed on the lawn. You started it and then I got the best of you. You have to take that loss and not run to the police two days later.
>
> . . . .
>
> . . . I don't like the idea I put my hands on you or that you want 1/2 my retirement and house.
>
> . . . .
>
> And though I wish the night of Sat, 24 Nov would have never happened the[] way we were heading it was bound to happen but you started and I got the best of you. What happened in AL was in AL. Nothing happened in the truck on the way home. What happened in FL was what happened in FL and if I had to go back I would have done the same thing because you started it and thought it was ok to disrespect me.

In 2013, Appellant and KA moved to New Mexico where he became a squadron commander and KA became a special education teacher at a local school. In mid-September 2013, KA reported that Appellant had recently sexually assaulted her. She also informed authorities of the prior abuse.

## II. DISCUSSION

### A. Military Rule of Evidence (Mil. R. Evid.) 412

Appellant argues that the military judge abused his discretion when he denied Appellant's motion to admit evidence of KA's sexual relationship with another teacher, JM. After hearing evidence at a closed hearing, the military judge denied Appellant's motion. The military judge found that KA did not have a sexual relationship with JM until after reporting Appellant's crimes;

therefore, the military judge concluded that evidence of their sexual relationship was not relevant.[3]

After trial, the convening authority granted Appellant's request for a post-trial Article 39(a) session to address the facts and circumstances of a payment made by KA's mother to JM.[4] By the time of this hearing, KA was no longer in a relationship with JM. At the hearing, KA maintained that her relationship with JM began to turn into a dating relationship "some months" after she reported Appellant's crimes in mid-September of 2013. When pressed on the meaning of "some months," she stated, "It wasn't in a few days. It wasn't in a few weeks. It was a period of time after that." JM had previously testified at a closed hearing that he was not a "date person" and he did not know when he started dating KA, but he claimed that they developed a sexual relationship sometime around Christmas of 2013 or New Year's Day in 2014. At the post-trial hearing, JM again stated that he did not know when he began dating KA, but confirmed they were dating when Appellant confronted him at a high school basketball game in November or December of 2013. In an unsworn memorandum completed after the post-trial hearing, JM stated that his relationship with KA was "sexual in nature" by "roughly November of 2013."

"We review the military judge's ruling . . . to exclude evidence pursuant to [Mil. R. Evid.] 412 for an abuse of discretion. Findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo." *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011) (citation omitted).

With three limited exceptions, evidence that an alleged victim engaged in other sexual behavior is inadmissible. Mil. R. Evid. 412(a), (b). The exception pertinent to Appellant's claim permits the admission of evidence if "the exclusion of [it] would violate the constitutional rights of the accused." Mil. R. Evid. 412(b)(1)(C). This exception includes an accused's Sixth Amendment[5] right to

---

[3] The military judge's ruling did not address the admissibility of a non-sexual relationship KA may have had with JM prior to her report; however, Appellant did not pursue this line of questioning at trial.

[4] The military judge concluded that KA's mother provided the money "for the renovations to [JM's] house for the purpose of ensuring that her daughter and grandchildren were going to live in a suitable house with sufficient living space," and not to alter JM's testimony. Furthermore, the military judge determined that JM "accepted the payments for the renovation in preparation to marry [KA] and ultimately merge their families together," and not to alter his testimony. Therefore, the military judge reasonably concluded that the court-martial "would not probably produce a substantially more favorable result for the accused" had this information been presented.

[5] U.S. CONST. amend. VI.

confront witnesses, including the right to cross-examine those witnesses. *Ellerbrock*, 70 M.J. at 318.

Evidence of other sexual behavior must also pass a balancing test as outlined in Mil. R. Evid. 412(c)(3) and clarified by *United States v. Gaddis*, 70 M.J. 248, 250 (C.A.A.F. 2011). The test is whether the evidence is "relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice." *Ellerbrock*, 70 M.J. at 318. Relevant evidence is any evidence that has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." Mil. R. Evid. 401. Evidence is material if it is "of consequence to the determination of [the] appellant's guilt." *United States v. Dorsey*, 16 M.J. 1, 6 (C.M.A. 1983) (quotation marks omitted).

The military judge did not abuse his discretion in excluding evidence of a sexual relationship between KA and JM. The evidence presented at the Mil. R. Evid. 412 hearing was that KA and JM were not in a sexual relationship when KA reported Appellant's crimes. The military judge's decision to exclude this evidence was premised on the timing of the sexual relationship as it related to KA's report. This was a logical, reasonable basis and not an abuse of discretion.

While the date KA and JM started "dating" is unclear, at both the pre-trial hearing and the post-trial hearing, KA and JM consistently stated that they were not in a sexual relationship when KA reported Appellant's crimes. JM's unsworn, post-trial statement that their relationship was "sexual in nature" by "roughly November of 2013" does not alter this sequence of events. Even assuming the accuracy of this statement, KA and JM were still not in a sexual relationship when KA reported in September 2013. Therefore, the basis for the military judge's decision remains sound, and it was not an abuse of discretion to exclude evidence of a sexual relationship between KA and JM under the facts of this case.

## B. Factual Sufficiency

Appellant also challenges the factual sufficiency of his convictions. We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this court is] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Our assessment of factual sufficiency is limited to the evidence presented at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

KA testified about the facts and circumstances of each offense. In addition, the Government presented testimony from the civilian police officers who re-

sponded to the 2009 and 2012 incidents. KA's son testified about what he witnessed during portions of the 2012 Florida incident. The Government introduced photographs of KA taken after the 2012 Florida incident. The Government also introduced testimony regarding statements made by Appellant and incriminating text messages from Appellant to KA.

Appellant took the stand and, notably, corroborated much of KA's testimony. Appellant admitted that he put his hands on KA during each of the physical assaults. According to Appellant, he did this to "restrain" her. Appellant also admitted that on a night in September of 2013, around 0100, KA was sleeping in her bed when Appellant took off all his clothes and got into bed with her. According to Appellant, he only wanted to engage in conversation and did not make any sexual overtures.

We have weighed the evidence in the record of trial and made allowances for not having personally observed the witnesses. We are convinced of Appellant's guilt beyond a reasonable doubt.

## C. Presentation of Additional Matters during a Post-Trial Article 39(a) Hearing and Post-Authentication Request for a New Trial

After the military judge authenticated the record of trial, Appellant submitted a request to the convening authority for a post-trial Article 39(a) hearing. In granting Appellant's request, the convening authority stated:

> Pursuant to R.C.M. 1102(b)(2), I direct a post-trial Article 39(a) session be held in the case of *U.S.* v. *Major Clarence Anderson III* to address the circumstances regarding a $10,000 payment made to [JM], a witness who testified during a pre-trial motions hearing, by . . . the mother of the victim in the case.

The post-trial Article 39(a) session was held to address this specific matter. However, after addressing the matter in the convening authority's order, the Defense requested permission to again question KA and JM about their sexual relationship. The Defense initially attempted to connect this to the payments, but eventually changed course and argued that the military judge had authority to address the sexual relationship under Rules for Courts-Martial (R.C.M.) 1102 and 1210 and Article 39(a), UCMJ. The Defense also asked the military judge to order a new trial. The military judge determined that, since the hearing occurred after authentication, he was limited to examining only the matters the convening authority had directed the hearing to address. Appellant alleges this conclusion was error.

Although we review a military judge's denial of a post-trial Article 39(a) hearing for an abuse of discretion, *United States v. Meghdadi*, 60 M.J. 438, 441 (C.A.A.F. 2005), we review the interpretation of R.C.M. provisions de novo, *United States v. Leahr*, 73 M.J. 364, 369 (C.A.A.F. 2014).

R.C.M. 1102 permits a military judge or convening authority to direct a post-trial Article 39(a) session:

> An Article 39(a) session under this rule may be called, upon motion of either party or *sua sponte* by the military judge, for the purpose of inquiring into, and, when appropriate, resolving any matter that arises after trial and that substantially affects the legal sufficiency of any findings of guilty or the sentence. The military judge may also call an Article 39(a) session, upon motion of either party or *sua sponte*, to reconsider any trial ruling that substantially affects the legal sufficiency of any findings of guilty or the sentence. The military judge may, *sua sponte*, at any time prior to authentication of the record of trial, enter a finding of not guilty of one or more offenses charged, or may enter a finding of not guilty of a part of a specification as long as a lesser offense charged is alleged in the remaining portion of the specification. Prior to entering such a finding or findings, the military judge shall give each party an opportunity to be heard on the matter in a post-trial Article 39(a) session.

R.C.M. 1102(b)(2).

R.C.M. 1102(d) clarifies that "[t]he military judge may direct a post-trial session any time before the record is authenticated. The convening authority may direct a post-trial session any time before the convening authority takes initial action on the case . . . ."

According to the plain reading of this rule, authentication terminates the military judge's authority to take action under R.C.M. 1102. However, our superior court, the United States Court of Appeals for the Armed Forces (CAAF), has "removed any substantive distinction between a military judge's authority to consider post-trial issues under R.C.M. 1102(b)(2) and R.C.M. 1210(f)." *United States v. Meghdadi*, 60 M.J. 438, 441 (C.A.A.F. 2005). Thus, we also analyze whether the military judge had the authority to grant a request for a new trial under R.C.M. 1210 at this stage.

A servicemember convicted of a crime may petition for a new trial any time within two years of the convening authority's approval of the findings and sentence. R.C.M. 1210(a). While R.C.M. 1210 does not explicitly give a military judge the authority to order a new trial, the CAAF has stated that a military judge has the authority to grant a new trial because "Article 39(a), UCMJ, authorized military judges 'to take such action after trial and before authenticating the record as may be required in the interest of justice.'" *United States v. Webb*, 66 M.J. 89, 92 (C.A.A.F. 2008) (quoting *United States v. Scaff*, 29 M.J. 60, 66 (C.M.A. 1989)). In *Webb*, the military judge granted a new trial "under

her Article 39(a), UCMJ, authority to resolve matters that arise after trial that 'substantially affect the legal sufficiency of any findings of guilty.'" *Id.* at 91 (quoting R.C.M. 1102(b)(2)). The CAAF held that this was not error because "[p]rior to authentication, a military judge has authority under Article 39(a), UCMJ, 'to convene a post-trial session to consider newly discovered evidence and to take whatever remedial action is appropriate.'" *Id.* at 92 (quoting *Scaff*, 29 M.J. at 66).

Appellant argues that the military judge had authority to grant Appellant's request for a new trial. We disagree. While a military judge has the authority to grant a new trial, this authority ends when the military judge authenticates the record of trial. Our superior court noted several times in *Webb* that a military judge's authority to grant a new trial relied on a predicate fact—that it occurred before authentication. *Webb*, 66 M.J. at 90–92; *see also Meghdadi*, 60 M.J. at 440-42 (finding that it was error for a military judge to deny a *pre-authentication* request for an Article 39 session to present evidence in support of a request for a new trial); *Scaff*, 29 M.J. at 66 ("Article 39(a) of the Uniform Code [authorizes] the military judge to take such action after trial and *before authenticating the record* as may be required in the interest of justice." (emphasis added)); *United States v. Griffith*, 27 M.J. 42, 47 (C.M.A. 1988) ([W]e are convinced that if, *before authenticating the record of trial*, a military judge becomes aware of an error which has prejudiced the rights of the accused . . . he may take remedial action on behalf of the accused without awaiting an order therefor by an appellate court." (emphasis added)).

Appellant's argument that the military judge had the authority to grant a post-authentication request for a new trial contradicts the CAAF's holdings on the matter. As the military judge noted, after authentication the convening authority is the authority from whom an appellant may seek this remedy.[6] The military judge did not err in determining he lacked the authority to grant Appellant's request for a new trial. Moreover, the military judge was not obligated to allow Appellant to present additional evidence in support of a request the military judge did not have the authority to grant.

---

[6] In addition to requesting a second post-trial Article 39(a) from the convening authority, Appellant also petitioned The Judge Advocate General of the Air Force for a new trial based on the matters Appellant sought to address at the post-trial hearing. That request was forwarded to this court. *See* Rule for Courts-Martial 1210(e). Appellant submitted pleadings and documentary evidence in support of the petition, and we heard oral arguments on this issue. We ultimately denied the petition for a new trial, *United States v. Anderson*, Misc. Dkt. No. 2016-17 (31 May 2017) (unpub. op.), but we are nonetheless convinced that Appellant has been afforded a "forum in which to make his case." *See United States v. Meghdadi*, 60 M.J. 438, 445 (C.A.A.F. 2005).

**D. Request for a Second Post-trial Article 39(a) Hearing**

After the military judge determined that he did not have the authority to grant Appellant's post-authentication request to present additional matters at the first Article 39(a) hearing, Appellant asked the convening authority to order a second post-trial Article 39(a) hearing.

Prior to taking action, the convening authority may order an Article 39(a) session to resolve "any matter that arises after trial and that substantially affects the legal sufficiency of any findings of guilty or the sentence." R.C.M. 1102(b)(2); *see also United States v. Ruiz*, 49 M.J. 340, 348 (C.A.A.F. 1998). The decision to grant or deny a request for a post-trial Article 39(a) session is within the "sound discretion" of the convening authority. *Meghdadi*, 60 M.J. at 441 (quoting *Ruiz*, 49 M.J. at 348). However, the reopening of trial proceedings is "generally disfavored" and should normally be "granted only if a manifest injustice would result." *Id.* "We review a convening authority's decision not to grant a post-trial hearing for an abuse of discretion." *United States v. Lofton*, 69 M.J. 386, 391 (C.A.A.F. 2011).

Appellant sought to introduce evidence at a second post-trial Article 39(a) hearing that JM had stated his relationship with KA was "sexual in nature" by "roughly November" 2013. In the request to the convening authority, Appellant argued that this testimony was "in stark contrast" to JM's testimony at the Mil. R. Evid. 412 hearing, and "would likely alter the ruling on the [Mil. R. Evid.] 412 motion . . . thereby affecting the landscape of the trial." We disagree.

The convening authority did not abuse his discretion in denying the request for a second post-trial Article 39(a) hearing. As noted above, the military judge's ruling was based on the fact that there was no sexual relationship between KA and JM at the time KA reported Appellant's crimes. JM's post-trial, unsworn memorandum does not alter this sequence of events. Therefore, it was soundly within the convening authority's discretion to deny Appellant's request.

**E. Timely Appellate Review**

The convening authority took action 323 days after the completion of Appellant's court-martial. Routine administrative matters, such as the authentication of Appellant's record of trial, contributed to this delay. However, much of the delay related to Appellant's substantial clemency requests, his requests for post-trial sessions, and the completion of a post-trial session requested by Appellant.

Appellant first asserted his right to timely post-trial processing 112 days after the conclusion of his court-martial. He reasserted this right on two other

occasions during the post-trial processing of his case. Again on appeal, Appellant argues that this post-trial delay requires any sentence imposed at a potential rehearing be limited to a dismissal.

Convicted servicemembers have a due process right to timely review and appeal of court-martial convictions. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). We review these issues de novo. *Id.*

A presumption of unreasonable post-trial delay, requiring a due process review, exists when the convening authority does not take action within 120 days of the completion of trial. *Id.* at 142. When there is a presumption of unreasonable delay, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135. We analyze each factor to determine whether a due process violation occurred. *Id.* "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Moreno*, 63 M.J. at 136. However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

The time between the completion of Appellant's trial and the convening authority's action (323 days) is presumptively unreasonable and triggers a full due process review.

Appellant asserts that he suffered prejudice because he has been oppressively incarcerated. Oppressive incarceration is "directly related to the success or failure of an appellant's substantive appeal. If the substantive grounds for the appeal are not meritorious, an appellant is in no worse position due to the delay, even though it may have been excessive." *Moreno*, 63 M.J. at 139. As we have found Appellant's appeals not meritorious, he has not suffered prejudice.

When there is no showing of prejudice, "we will find a due process violation only when . . . the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. at 362. Balancing the other three *Barker* factors, we do not find that the delay in this case would adversely affect the public's perception of the fairness and integrity of the military justice system. Therefore, we find no due process violation.

Although we find no due process violation, we nonetheless consider whether Article 66(c), UCMJ, relief pursuant to *United States v. Tardif*, 57 M.J. 219, 224 C.A.A.F. 2002), is appropriate. In doing so, we are guided by factors stated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App.

2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016),[7] with no single factor being dispositive. We conclude that the exercise of our extraordinary Article 66(c) authority is not appropriate in this case.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

---

[7] These factors include: (1) How long the delay exceeded the *Moreno* standards; (2) what reasons, if any, for the delay, and whether there is evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) whether there is some evidence of harm (either to the appellant or institutionally) caused by the delay; (4) whether the delay has lessened the disciplinary effect of the sentence, and whether relief is consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) given the passage of time, whether this court can provide meaningful relief. *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).