# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39595**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Rodger E. PERKINS**
Major (O-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 August 2020

————————————

*Military Judge:* Shelly W. Schools.

*Approved sentence:* Dismissal. Sentence adjudged 2 October 2018 by GCM convened at Joint Base Andrews, Maryland.

*For Appellant:* Major David A. Schiavone, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Zachary T. West, USAF; Mary Ellen Payne, Esquire; Andrew J. Quillen (civilian intern).[1]

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge MINK and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a pretrial

---

[1] Mr. Quillen was a legal intern with the Air Force Legal Operations Agency and was at all times supervised by attorneys admitted to practice before this court.

agreement, of one specification of dereliction of duty, two specifications of conduct unbecoming an officer and gentleman, and three specifications of making false statements concerning a Federal Housing Administration (FHA) loan application, in violation of Articles 92, 133, and 134,[2] Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 933, 934.[3] The military judge sentenced Appellant to be dismissed from the service. The convening authority approved the sentence as adjudged.

On appeal, Appellant personally raises a single assignment of error (AOE): whether Appellant's plea of guilty to conduct unbecoming an officer and gentleman was improvident when the military judge failed to adduce more than mere conclusions that text messages Appellant sent dishonored and disgraced him.[4] Appellant also filed a supplemental AOE claiming relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), is warranted due to the violation of the 18-month standard for appellate review established in *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006).

We find Appellant's conviction both legally and factually sufficient, and no error materially prejudicial to the substantial rights of Appellant occurred. Thus, we affirm the findings and sentence.

## I. BACKGROUND

From 2009 until 2016, Appellant was a Special Agent with the Air Force Office of Special Investigations (AFOSI). In 2013, while he was deployed, Appellant began communicating with KS. Appellant had known KS since they were in middle school together. At some point following his deployment, Appellant and KS began to casually see each other, but did not have an exclusive relationship. Appellant shared with KS that he was in the military and that he worked for AFOSI, which he characterized as a federal law enforcement agency analogous to the Federal Bureau of Investigation (FBI). Appellant knew that KS was interested in becoming an FBI agent and offered to help train KS on firearms and marksmanship in order to help make her a more competitive applicant. In the spring of 2016, Appellant socialized with KS, her friends, and at least one family member at a local karaoke bar. On that occasion, KS introduced Appellant as her boyfriend. This was the last time Appellant and KS physically saw each other.

---

[2] All specifications of Charge III allege a violation of 18 U.S.C. § 1014 and were charged as Clause 3 violations of Article 134, UCMJ.

[3] All references in this opinion to the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[4] This issue was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

In July 2016, Appellant married SP. Subsequently, in August 2016, KS learned through a friend that Appellant was now possibly married, and reached out to him via text message and phone calls to confront him about his relationship with SP. In response, Appellant created an email account using the name of his spouse and—posing as SP—exchanged multiple emails with KS. In those emails, Appellant directed KS not to contact either of them anymore. At the same time, using his own cellphone, Appellant also exchanged text messages with KS and in a series of messages on or about 15 August 2016, Appellant told KS, "I too am a lawyer whore," and "[y]ou are f**king with the wrong one." The messages also contained KS's first name, middle name, and social security number, followed by "[d]o not f**k with me!" That same day, feeling threatened, KS wrote a final email to Appellant requesting that he stop all contact with her. On 16 August 2016, believing that her personal information was breached through government access, KS reported these text messages to civilian law enforcement authorities. Around the same time, Appellant created and sent a fraudulent "cease and desist" order to KS. The "cease and desist" letter appeared to have been indorsed and approved by the Deputy Director of the FBI and was received by KS on or about 17 August 2016. Subsequently, KS filed complaints with both the FBI and the Office of the Inspector General of the Department of Defense advising them of Appellant's actions and the suspected security breach.

At trial, Appellant pleaded guilty to one specification of willful dereliction of duty on divers occasions, for wrongfully using a law enforcement computer data system on multiple occasions to conduct unauthorized searches of individuals, including KS, for personal reasons. Appellant also pleaded guilty to two specifications of conduct unbecoming an officer and gentleman. The first of these two specifications stemmed from the threatening text messages Appellant sent to KS and the second concerned the creation of the fraudulent "cease and desist" letter; Appellant only takes issue with the first specification on appeal. Finally, Appellant pleaded guilty to three specifications related to false statements he made while trying to obtain an FHA loan.

During Appellant's court-martial, the Government's primary evidence consisted of a 178-page stipulation of fact, agreed to by the parties, and the verbal exchange of information between the military judge and Appellant during various phases of the court-martial.

## II. DISCUSSION

### A. Providence of Plea

Appellant argues that his plea of guilty to the second specification of conduct unbecoming an officer and gentleman was improvident because the military judge failed to adduce more than mere conclusions that the text messages sent by Appellant dishonored and disgraced him. We disagree.

### 1. Law

"A military judge's decision to accept a guilty plea is reviewed for abuse of discretion." *United States v. Forbes*, 78 M.J. 279, 281 (C.A.A.F. 2019) (citing *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996)). "During a guilty plea inquiry the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea before accepting it." *Id.* (citing *United States v. Inabinette*, 66 M.J. 320, 321–22 (C.A.A.F. 2008)). "It is not enough to elicit legal conclusions." *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002). "The military judge must elicit facts to support the plea of guilty." *Id.* The burden is on the appellant to establish that the military judge abused his discretion. *United States v. Phillips*, 74 M.J. 20, 21–22 (C.A.A.F 2015) (citation omitted). An abuse of discretion occurs when "the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citation omitted). Specifically, the United States Court of Appeals for the Armed Forces (CAAF) explained "it is not that the judge is maybe wrong or probably wrong," but rather it must strike us as "'wrong with the force of a five-week-old, unrefrigerated dead fish.'" *United States v. Byrd*, 60 M.J. 4, 12 (C.A.A.F. 2004) (J. Crawford concurring) (quoting *United States v. French*, 38 M.J. 420, 425 (C.M.A. 1994)). "This is an area in which the military judge is entitled to 'significant deference.'" *United States v. Timsuren*, 72 M.J. 823, 828 (A.F. Ct. Crim. App. 2013) (quoting *Inabinette*, 66 M.J. at 322).

In pleading guilty to the violation of Article 133, UCMJ, Appellant agreed he (1) "did or omitted to do certain acts; and (2) that, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman." *Manual for Courts-Martial, United States* (2016 ed.), pt. IV, ¶ 59b. "An officer's conduct need not violate other provisions of the UCMJ or even be otherwise criminal to violate Article 133, UCMJ." *United States v. Meakin*, 78 M.J. 396, 403 (C.A.A.F. 2019) (citing *United States v. Lofton*, 69 M.J. 386, 388 (C.A.A.F. 2011)). "The gravamen of the offense is that the officer's conduct disgraces him personally or brings dishonor to the military profession such as to affect his fitness to command the obedience of his subordinates so as to successfully complete the military mission." *Meakin*, 78 M.J. at 403 (citation omitted). A conviction is legally sufficient so long as there is some evidence of either of these two outcomes, upon which a "reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Id.* at 400–01 (citation omitted); *United States v. Roderick*, 62 M.J. 425, 429 (C.A.A.F. 2006) (citation omitted).

### 2. Analysis

The military judge did not abuse her discretion in accepting Appellant's guilty plea because she had sufficient evidence to find that Appellant's threats

against KS, including the use of sensitive personal information and profanity, disgraced him personally and represented a significant departure from the standards of conduct for an officer and gentleman. In fact, Appellant repeatedly expressed his belief during the plea colloquy that his conduct was unbecoming of an officer and gentleman and provided a sufficient objective factual predicate to support that belief.

The military judge began her inquiry by explaining what a guilty plea entailed and what rights Appellant forfeited by pleading guilty. She asked Appellant, on multiple occasions, if he understood what she was explaining, and Appellant repeatedly replied "Yes, Your Honor." The military judge then defined the stipulation of fact as a formal agreement between Appellant and the Government and explained that it contained facts and circumstances surrounding the offenses for which each of the parties agreed were true and would be used to determine Appellant's guilt. Appellant acknowledged that he understood the stipulation of fact when he voluntarily signed it and agreed to its uses.

Next, the military judge explained the elements of conduct unbecoming of an officer and gentleman, defined both "wrongful" and "unbecoming," and explained the difference between behavior in an official capacity and a personal capacity. Appellant confirmed he understood each element and definition and agreed in both the stipulation of fact and to the military judge that it accurately described his conduct as charged.

In his own words, Appellant told the military judge that he "used profane language," included KS's social security number, and "became more aggressive" in the messages he sent to KS. Appellant further added that the statements he made to KS and the "manner in which they were made were conduct unbecoming of an officer and a gentleman in the United States Air Force." Appellant acknowledged that he knew "that members of the general public would not expect an officer to conduct himself in this manner under those circumstances," and that he knew his "actions would bring discredit upon the Air Force . . . in the eyes of the general public." The military judge then followed up with clarifying questions to ensure Appellant understood the law and she understood Appellant's actions. The military judge specifically asked Appellant if the point of these messages was to communicate to KS that he knew how to "get to" her, to which Appellant replied "[that is] correct."

In the closing discussions on this specification, Appellant admitted to the military judge that he used the specific language in the specification to include KS's social security number, the messages were more than a mere disagreement, and he understood the messages could be perceived by KS as threatening. Appellant also admitted that sending threatening messages was dishonoring and disgracing to him as an officer and detracted from his standing as an officer, and sending these messages was more than slight misconduct.

Appellant further agreed that he did not have permission to send the messages, was not authorized to send the messages, and could have avoided sending them altogether. In his own words, Appellant acknowledged that there was "no justification for [him] to respond and use that language at all," and that his "emotions" got the best of him. At the end of the plea colloquy, the military judge again read the elements of the offense to Appellant and he confirmed that he believed his acts constituted conduct unbecoming an officer and gentleman. The military judge ended her inquiry by asking if any further inquiry was necessary on this specification. Both trial counsel and trial defense counsel replied in the negative.

We conclude the military judge conducted a more than adequate plea inquiry. She explained the offense and its elements, clarified concepts, corrected inconsistencies between the plea inquiry and the stipulation of fact, defined terms, summarized the law, and stopped multiple times to ensure Appellant's understanding. Appellant pleaded guilty, voluntarily entered into a stipulation of fact, and admitted to all the elements of conduct unbecoming an officer and a gentleman, including that the messages he sent to KS dishonored and disgraced him and compromised his standing as an officer. The providence inquiry adequately established both Appellant's actual guilt and his personal belief in his guilt, and the military judge determined that there was an adequate basis in law and fact to accept Appellant's pleas. We find the military judge did not abuse her discretion in accepting them.

## B. Timeliness of Appellate Review

Additionally, Appellant claims that *Tardif* relief is warranted in this case due to a violation of the third *Moreno* standard. *Tardif*, 57 M.J. at 223–24; s*ee Moreno*, 63 M.J. at 135 (citations omitted). We decline to grant such relief.

### 1. Law

We review de novo whether an appellant has been denied the due process right to a speedy appeal. *Moreno*, 63 M.J. at 135 (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed and a decision rendered within 18 months of a case being docketed. *Id*. at 142. A presumptively unreasonable delay triggers an analysis of the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). A presumptively unreasonable delay satisfies the first factor, but the Government "can rebut the presumption by showing the delay was not unreasonable." *Id*. at 142. Assessing the fourth factor of prejudice, we consider the interests of "prevention of oppressive incarceration," "minimization of anxiety and concern of those convicted," and "limitation of the possibility that . . . grounds for appeal, and . . . defenses . . . might be impaired." *Id*. at 138–39 (citation omitted).

**2. Analysis**

Appellant's case was originally docketed with the court on 20 December 2018. The delay in rendering this decision after 20 June 2020 is presumptively unreasonable. Appellant was not confined and did not assert his right to a timely appellate review at any time before the supplemental AOE was filed. In that AOE, he made no specific claim of prejudice, and we find none.

Finding no *Barker* prejudice, we also find the delay is not so egregious that it "adversely affects the public's perception of the fairness and integrity of the military justice system." *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). As a result, there is no due process violation. *See id.*

Regarding Appellant's specific claim to *Tardif* relief, we determine that no such relief is warranted in the absence of a due process violation. *See Tardif*, 57 M.J. at 223–24; *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). In *Tardif*, the CAAF recognized that "a Court of Criminal Appeals has authority under Article 66(c) to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)." 57 M.J. at 224 (citation omitted). Furthermore, we as a service Court of Criminal Appeals are required by Article 66(c), UCMJ, to determine which findings of guilty and the sentence or part thereof "should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c); *see Tardif*, 57 M.J. at 224. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(c), UCMJ, authority to grant relief for the delay in completing appellate review.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and the sentence are **AFFIRMED**.[5]


FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[5] We note, as highlighted by appellate defense counsel, that the general court-martial order (CMO), dated 12 December 2018, contains three errors that require correction. These errors are found in Specification 1, Specification 2, and Specification 3 of Charge III. In Specification 1, Appellant was charged with stating a certain address would be his principal residence, even though Appellant would *not* occupy that residence; the CMO omits the word "*not*." Specification 2 is written that Appellant would not occupy the address *as his principal residence*; the CMO omits the words "*as his principal residence*." Specification 3 on the CMO is also incorrect in that it omits the words "*as their principal residence*." Appellant has not claimed prejudice and we find none. We direct a corrected CMO to remedy these errors.